1  Timothy L. Gall
2  15435 La Jolla Dr.
3  Morgan Hill, CA  95037
4  (408) 778-0965
5  (408) 778-0965 Fax
6
7  Plaintiff

FILED

๚฿9 MAR ๚9  P 12: 28

ΓICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE VENUE

13  TIMOTHY L. GALL
14          Plaintiff                    Case No. C0800120JW
15  vs.
16                                        Table of Authorities
17  City of San Jose
18          Defendant
19
20
21      1. Exempt Officer Equality Program also known as "the Program", Consent Decree
22         C-96 20060 RS, June 21, 2005.
23      2. C-96 20060 RS Ninth Circuit opinion, entitled *Cripe v. City of San Jose, 261 F.3d*
24         *877 (9th Cir. 2001)*.
25
26
27
28

Dated:03-17-2008            _____/TCGall_____
                                      Plaintiff

Case Management Statement 03-17-2008        6

C0800120JW

1  RICHARD DOYLE, City Attorney (#0886250
   GEORGE RIOS, Assistant City Attorney (#077908)
2  CLIFFORD S. GREENBERG, Senior Deputy City Attorney (#122612)
   Office of the City Attorney
3  151 West Mission Street
   San Jose, California 95110
4  Telephone: (408) 277-4454

5  Attorneys for Defendants
   CITY OF SAN JOSÉ, et al.

6

7

8                      UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
9                           SAN JOSE VENUE

10

11  RODGER M. CRIPE, JAMES P.              NO. C-96 20060 RS
    O'KEEFE, THOMAS PALMER, VINCE          (Consolidated with No.: C-96-20494)
12  FEARHEILEY, BRIAN ARVIN, and
    MERCEDES PHILLIPS                      **NOTICE OF ENTRY OF CONSENT
13                                         DECREE**
                    Plaintiffs,
14
          vs.
15                                         JUDGE:    RICHARD SEEBORG
    CITY OF SAN JOSE, et al.,
16
                    Defendants.
17

18        PLEASE TAKE NOTICE that the Consent Decree in the above-matter was filed on

19  June 21, 2005, a copy of which is attached hereto.

20

21                                         RICHARD DOYLE, City Attorney

22  DATED:      JUNE 23, 2005
                                           By _____
23                                            CLIFFORD S. GREENBERG,
                                              Senior Deputy City Attorney
24
                                           Attorneys for Defendant
25                                         CITY OF SAN JOSE

26

27

28

NOTICE OF ENTRY OF CONSENT                                          313263.doc
DECREE - C-96 20060 RS

C 08 00120 JW



ORIGINAL FILED

JUN 2 1 2005

CLERK U S DW WIEKING
NORTHERN DISTRICT COURT
SAN JOSE CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE VENUE

| | |
|---|---|
| RODGER M. CRIPE, JAMES P. O'KEEFE, THOMAS PALMER, VINCE FEARHEILEY, BRIAN ARVIN, and MERCEDES PHILLIPS<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | NO. C-96 20060 RS<br>(Consolidated with No.: C-96-20494)<br><br>**CONSENT DECREE**<br><br><br>JUDGE:    RICHARD SEEBORG |

## INTRODUCTION

This action involves a complaint by current and former San Jose Police Officers Rodger Cripe, Vince Fearheiley, James O'Keefe, Thomas Palmer, Brian Arvin and Mercedes Phillips regarding the manner in which the City of San Jose treats police officers with injuries that prevent such officers from working in a Patrol assignment. Plaintiffs claim that San Jose's system violates the Americans With Disabilities Act ("ADA") as well as California's Fair Employment and Housing Act ("FEHA"). Defendant denies such violations.

Following a Ninth Circuit opinion, entitled *Cripe v. City of San Jose*, 261 F.3d 877 (9th Cir. 2001), and a jury trial, resulting in a mistrial due to a deadlocked jury, the parties desire to resolve the lawsuit by agreeing to implement an Exempt Officers Equality Program

1  (hereinafter sometimes identified as "the Program"), designed to satisfy the interests of the
2  Police Department and the interests of injured and non-injured police officers. The terms of
3  this Consent Decree have been negotiated and agreed upon among the parties with the view
4  that compliance with it would be consistent with the requirements of the ADA and California
5  law relating to disability discrimination. The terms of this Decree represent a compromise, to
6  which all parties are not in favor of all aspects, but nevertheless agree to be bound by its
7  terms.

8         In this action, Plaintiffs challenge the current Modified Duty program, memorialized in
9  Article 39 of the Memorandum of Agreement ("MOA") between the City of San Jose and the
10  San Jose Police Officers' Association ("POA"), the recognized bargaining unit for Police
11  Officers in San Jose. The current Modified Duty program provides that thirty police officer
12  positions shall be designated for officers physically unable to work a Patrol assignment, and
13  that such officers shall bid for these thirty positions based on seniority. The Modified Duty
14  program also exempts such officers from performing Patrol assignments, as is required for all
15  other police officers in San Jose. Under the current Officer Transfer Policy, non-exempt
16  officers must perform Patrol duties for at least one year prior to obtaining a specialized
17  assignment.

18         Plaintiffs contend that there are other specialized assignments, not included in the
19  thirty designated positions, that they are physically capable of performing and are denied the
20  opportunity to compete for such assignments under the City's program. San Jose contends
21  that the positions chosen were negotiated and reflect a fair allocation of modified positions,
22  considering the needs of all officers and the Police Department.

23         Plaintiffs also contend that they have been denied the opportunity to promote to the
24  rank of sergeant because of their disabilities. Currently, San Jose requires newly promoted
25  sergeants to be assigned to the Bureau of Field Operations. Plaintiffs contend that this policy
26  unfairly prevents officers unable to work a Patrol assignment from promoting. San Jose
27  contends that it can make and has made exceptions to its policy for qualified applicants to
28  sergeant.

## CONSIDERATIONS

A number of factors and circumstances were considered in negotiating and agreeing to the terms of this Consent Decree. The parties set forth the major considerations herein, for purposes of providing context to the Decree and guidance for any disputes that may arise in the future.

1.  The parties recognize that, despite best efforts to promote safety, police officers are injured in the line of duty. Such injuries are an unfortunate but natural consequence of police work.

2.  The parties recognize that officers with permanent or long-term injuries represent a valuable resource to the Police Department. Given the training and experience obtained by and invested in police officers, the Police Department is encouraged to utilize the knowledge and experience of officers with physical restrictions.

3.  A goal of this Consent Decree is to provide reasonable opportunity for injured officers to compete for and obtain any of the positions within the Department that do not involve the arrest function, and involve little or no strenuous activity, commensurate with the physical capability of applicants to perform the required work, and consistent with the Police Department's overall mission of protecting the safety of the citizens of San Jose.

4.  The parties acknowledge that all budgeted police officer positions are positions that must be filled by sworn police personnel and perform essential and valuable functions toward the overall administration of the Police Department.

5.  The parties recognize the legitimate interest of the San Jose Police Department in maximizing the number of officers available for Patrol duties, and other physically strenuous activities. The responsibilities of the Police Department are largely physical, involving suppression of criminal activity and exhibiting levels of force necessary to control dangerous and unruly situations. Emergency situations also may require the Department to provide a large uniformed presence. Additionally, at any particular time, because of short-term disabilities, sick leave, military leave,

training missions, family leave, and the like, approximately 30 to 50 officers, in addition to those in the formal Modified Duty program, are unavailable for Patrol activities, reducing the actual level of officers who may participate in Patrol assignments on a day-to-day basis. While the Department recognizes that non-physical assignments represent necessary and valuable aspects of police work, the philosophy of the Department is clearly Patrol-oriented. The first and main duty of the Department is the visible protection of the public. Because of these principles, the parties recognize that the Department has a legitimate interest in limiting the number of officers on the force who are physically unable to perform the strenuous physical activities necessary in a Patrol assignment. A goal of this Consent Decree is to strike a balance between the physical needs of the Department and the interests of injured officers in continued and meaningful employment. Nothing in this Consent Decree requires the City of San Jose to change its policies and procedures regarding the recruiting and hiring of police officers to entry-level employment.

6. The parties recognize that traditionally, in San Jose, officers promoted to Sergeant have been trained and evaluated in the Bureau of Field Operations, primarily in the Patrol Division. Since the primary duty of a police sergeant is the supervision of a team of Patrol Officers, newly promoted Sergeants are expected to gain experience in the field. A goal of this Consent Decree is to balance the needs of the Department in supervising its police force and the interests of injured sergeants and prospective promotees in career development.

7. The parties recognize that the administration of the Police Department continues to change over time, based on budget, staffing, criminal justice priorities, negotiated terms and conditions of employment, and numerous other factors. In view of the fluid nature of the organization, the parties intend to provide for flexibility in administering this Program, and recognize that changes in circumstances may require changes in this Consent Decree beyond the provisions contemplated

herein. Additionally, the parties recognize that even after implementation of this Consent Decree, there may be specialized assignments not open to exempt officers in which the requirement of making a forcible arrest is a marginal, not an essential function. The Police Department is committed to periodic review of positions within the Department, with a view toward inclusion of such positions in the Exempt Officers Equality Program. A goal of this Consent Decree is to provide for flexibility in administering the Program to facilitate changed circumstances and maximum inclusion of positions, given the interests of the Department and its officers.

8. The parties recognize that the ADA and FEHA require every type of employer to find ways to bring the disabled into its ranks, even when doing so imposes some costs and burdens. By entering into this Consent Decree, the Police Department agrees to participate in this process as long as it can do so in a manner that does not compromise public safety.

9. In order to comply with San Jose City Charter Section 1111, the parties have met and conferred with the San Jose Police Officers Association in connection with the drafting of this Consent Decree. As reflected by the signature below, the SJPOA approves of the agreement, and of the dispute resolution provisions contained herein.


## EXEMPT OFFICERS EQUALITY PROGRAM


1. Article 39 of the MOA shall be deleted. This Consent Decree shall become part of MOA and, unless otherwise provided herein, grievable in the same manner as other provisions thereof.

2. Nothing in this Consent Decree affects the provisions as negotiated in the Officer Transfer Policy. That policy, as it pertains to the movement of officers into and

from specialized positions, shall apply to all officers other than those exempted therefrom under this Exempt Officers Equality Program.

3. Under this Exempt Officers Equality Program, a maximum number of officers who, because of injury, are permanently restricted by a physician from performing Patrol functions, shall be exempted from the requirement in the Officer Transfer Policy of rotating into a Patrol assignment before and after holding a specialized assignment. For purposes of this Consent Decree, such officers shall be referred to as "exempt officers," or "officers subject to the Exempt Officers Equality Program." The maximum number of exempt officers shall be determined by an analysis of the Department's ability to function effectively considering the inability of such officers to be assigned to a Patrol position. The maximum number of exempt officers shall be determined every five years, by the Chief of Police, following a recommendation from a panel composed of the Deputy Chief of the Bureau of Administration, one person selected by the SJPOA, and one exempt officer selected by the exempt officers and subject to approval by the Chief of Police and the SJPOA. Such factors as total number of officers, budgetary considerations, law enforcement priorities, past experience, and other relevant criteria, shall be considered. Should the Chief of Police, following said recommendation, determine that the maximum number of exempt officers should be decreased, the requirements of City Charter Section 1111 (meet and confer with interest arbitration, if necessary) shall apply, pursuant to Paragraph 17, infra.

4. Immediately upon the effective date of this Consent Decree, the maximum number of exempt officers shall remain at thirty, based on the past experience of the Department in evaluating the needs of the organization, and on prior negotiations between the City of San Jose and the SJPOA. The first subsequent determination shall be five years from the effective date of this Consent Decree. Nothing in this Consent Decree prevents an interim determination should drastic changes in staffing resulting from budgetary cuts, or other economic situations, occur.

5. The Department shall designate a number of positions equal to 150% of the maximum number of exempt officers as positions within the Exempt Officers Equality Program. (If the maximum number of exempt officers is an odd number, the number of positions within the Exempt Officers Equality Program shall be rounded down to the nearest whole number.) All such positions shall be administrative in nature and characterized by the fact that they do not require an officer to be able to affect an arrest. Those positions shall be divided into two groups: Tier One positions and Tier Two positions.

6. The Department shall designate a number of Tier One positions equal to the maximum number of exempt officers. Exempt officers shall be entitled to obtain one of the Tier One positions. Upon the effective date of this Consent Decree, the Tier One positions shall be positions already on the 2005 Article 39 bid list, as follows:

Court Liaison Trial Notice Officer

Court Liaison Felony Narcotics Officer

Court Liaison Misdemeanor Narcotics Officer

Court Liaison 14601 DUI Filings

Domestic Violence Unit

SAIU Megan's Law Sex Registrant Coordinator

Background Investigator – 1

Background Investigator – 2

Background Investigator – 3

Traffic Investigative Support

OSSD – Tow Hearing – 1

OSSD – Tow Hearing – 2

NCI/Asset Forfeiture Officer – 1

Insider

Watch Bulletin

NCI/Asset Forfeiture Officer – 2 (prescription fraud)

Assaults/Juvenile Unit Investigative Support

Community Services Officer – Reserves

Community Services Officer – VOLT

Community Services Officer – Web

Robbery Investigative Support

MERGE Intel Officer

City Attorney's Office

Property/Evidence Clearance Officer

Warrant Officer

Fraud/Burglary Investigator

Permits Officer – 1

Permits Officer – 2

Permits Officer – 3

Background Investigator – 4

When the maximum number of exempt officers is determined, under paragraph 3, the panel shall also conduct an analysis of the composition of the Tier One positions and shall make a recommendation to the Chief of Police as to whether any positions on the list should be removed or whether any positions not on the list should be included. The Chief of Police, after receiving the recommendation of the panel, may change the composition of the list of Tier One positions, subject to the provisions of Paragraph 17.

7. The Department shall designate a number of Tier Two positions equal to 50% of the maximum number of exempt officers. (If the maximum number of exempt officers is an odd number, the number of Tier Two officers shall be rounded down to the nearest whole number). Exempt officers **and** non-exempt officers (officers subject to the Officer Transfer Policy) shall be able to compete on an equal basis

for Tier Two positions.  Upon the effective date of this Consent Decree, the Tier Two positions shall be:

Court Liaison Unit (Bureau of Investigations) – Three positions

BFO Admin. Unit - Administrative Officer

BFO Admin. Unit - Administrative Technical Officer

Driver Training Instructor

Training Unit/ Decentralized (non CPT)

Training Unit/ CPT

Range Unit (Bureau of Administration) – Two positions

Multimedia Producer, Video Unit (Bureau of Administration);

Bureau of Technical Services, Laptop Technician

Community Services Officer – CPTED

Pre-processing Administrative Officer

Special Projects Tech in the Systems Development Unit (Bureau of Tech. Services).

When the maximum number of exempt officers is determined, under paragraph 3, the panel shall also conduct an analysis of the composition of the Tier Two positions and shall make a recommendation to the Chief of Police as to whether any positions on the list should be removed or whether any positions not on the list should be included.  The Chief of Police, after receiving the recommendation of the panel, may change the composition of the list of Tier Two positions.

8. The bidding for Tier One positions shall occur on a two-year cycle.  The order of bidding shall be by seniority, with officers with on-duty injuries bidding first.  The shift change date for Tier One positions shall coincide with the Department's bi-annual shift change.  In order to accomplish this, bidding for Tier One positions shall occur after officer transfers to specialized positions have been identified (including Tier 2 assignments) for the forthcoming shift change and after the officer "call-in" for Patrol shift change assignment.  Tier One bidding shall occur no later than two weeks prior to the actual shift change.  The Department shall designate

half of the Tier One positions as "crucial positions" which must be filled because of their importance to the functioning of the Department. During the bidding process, if it becomes evident mathematically that all of the crucial positions may not be filled, the remaining bidders must select from the remaining crucial positions. Should one of the crucial positions be vacated for any reason other than a scheduled Tier One bid, the Department shall have the option of reassigning an officer in a non-crucial Tier One position into the vacant crucial position. Unless an officer volunteers to fill that position, the re-assignment shall be made by selecting the officer with the least seniority.

9. Tier Two positions shall be selected in accordance with the Officer Transfer Policy. That is, Tier Two positions are subject to the competitive application, testing and selection process determined by the Officer Transfer Policy, which involves the creation of an eligibility list for the position. Job descriptions for Tier Two positions shall include any particular physical requirements of the job. Only applicants who fulfill all the qualifications set forth in the job description may be included on the eligibility list. Selections are made for vacant positions from such eligibility list in order of rank on the list. Vacancies for Tier Two positions are determined by the Department in the same manner that vacancies for other specialized assignments are determined. Tier Two positions are subject to a "cap" (duration of assignment), as determined by the Officer Transfer Policy. Shift changes for Tier Two positions shall coincide, as nearly as is possible, with the shift change dates for other specialized assignments. Approximately 60 days prior to the actual shift change date, the Department shall notify officers of the selection from eligibility lists for Tier Two positions. All exempt officers who have not obtained Tier Two positions then participate in the Tier One bidding, as described in paragraph 8, above. Exempt officers obtaining Tier Two positions shall, upon expiration of the cap for that position, return to a Tier One position. Should the expiration of the cap for a Tier Two position occur at a time not coinciding with a Tier One bid, the Department

1    shall assign the officer leaving a Tier Two position to one of the vacant Tier One

2    positions.

3    10. Officers subject to the Exempt Officers Equality Program.  The program described

4        in this Consent Decree is intended to apply only to officers who are permanently

5        restricted from performing the forcible arrest function by a physician or are

6        otherwise permanently physically restricted from a Patrol assignment, or are so

7        restricted on a long-term basis.  When an officer is first injured and medically

8        restricted from performing such function, but is otherwise released to return to

9        work, the Department shall attempt to accommodate that officer within the officer's

10       bureau of origin for up to 120 days.  Should an officer's restriction from performing

11       a forcible arrest or otherwise participating in Patrol activities continue in excess of

12       120 days after return to work, that officer shall then be immediately subject to the

13       Exempt Officers Equality Program and shall be assigned to one of the vacant Tier

14       One positions.  An officer subject to the Program who recovers to the extent that he

15       or she is no longer medically restricted from performing the arrest function, and is

16       otherwise cleared for full duty Patrol activities, shall be reassigned to a Patrol or

17       other full-duty position.

18   11. The number of officers subject to the Exempt Officers Equality Program shall not

19       exceed the maximum number described in paragraphs 3 and 4, above.  Should the

20       number of exempt officers equal that maximum number and should an additional

21       officer or officers sustain injuries that would otherwise qualify for inclusion in the

22       Program, the following procedure shall apply:  When it appears likely that an officer

23       will qualify for the Program, the Department shall evaluate all the officers subject to

24       the Program to determine if there is a likelihood that, through retirement or

25       recovery, a vacancy within the program will exist.  If so, the Department shall make

26       reasonable efforts to accommodate the officer or officers by a temporary

27       assignment, pending an opening in the Program. If there is no likelihood of a

28       vacancy, or if a temporary assignment is not reasonably possible, the Department

shall make an announcement requesting a volunteer to vacate his or her position within the Program. In case of multiple volunteers, the officer with the highest Program bidding status (under paragraph 8) prevails. Should an officer volunteer to vacate his or her position within the Program, that officer may exhaust his or her remaining accumulated sick time, vacation time, or compensatory time (integration time) pending an application for retirement. Should that volunteer officer exhaust all integration time and not retire or separate from City service, the Department shall notify said officer to either return to full-duty status or be immediately separated from City service. Should the volunteer apply for a disability retirement, the Department shall advise the Retirement Board that the Department does not have a position available for this volunteer because of the volunteer's physical restrictions and lack of available Program positions. The Department shall assign the officer becoming subject to the Program to one of the Tier One positions. Should no officers volunteer for vacation of their position, the injured officer shall be allowed to replace the officer within the Program who has the lowest Program bidding status (under paragraph 8). That officer shall be removed from his or her position and shall be required to use any accumulated sick, vacation, or comp. time (integration time). Once that officer's available integration time has been used, and if no positions within the Program are then available, the officer shall be notified by the Department to immediately return to full-duty or be separated from City service. Should the officer apply for disability retirement, the Department shall advise the Retirement Board that the Department does not have a position available for this officer because of the officer's physical restrictions and lack of available Program positions. The Department shall not be required to grant the volunteer officer or the officer forced from the Program any term of unpaid leave.

12. Promotion. The Department promotes officers to the rank of sergeant, in compliance with civil service rules, from an eligibility list created through a competitive examination. Officers subject to the Exempt Officers Equality Program

shall not be prohibited from competing for spots on the eligibility list for sergeant. Should an officer subject to the Program be selected to promote to sergeant, the Department shall give consideration to assignment outside of the Patrol Division, notwithstanding the provision in the Sergeants' Transfer Policy requiring incoming sergeants to be assigned to a Field position.

13. Uniforms. Because the public regards an officer in uniform as being able to perform the forcible arrest function and/or physical intervention function, exempt officers shall not wear the police uniform while on duty. The Chief of Police may create exceptions under appropriate circumstances.

14. Overtime. Each Unit has its own overtime policies. Approval or denial of overtime shall be determined based on an officer's ability to physically perform the overtime assignment, not on injured status alone.

15. Outside work permits. Exempt officers shall be allowed to obtain outside work permits consistent with the nature and restrictions of their injuries. Applications for work permits for exempt officers shall be determined based on an officer's ability to physically perform the outside work, not on injured status alone.

16. Concealed weapon permits. Retiring exempt officers shall be entitled to CCW endorsement on their Retirement Identification as determined under Penal Code 12027.1

17. Dispute resolution. Should a dispute arise as to the implementation or interpretation of this Consent Decree, the following procedures shall apply: If an officer contends that the terms of the agreement were improperly applied to his or her circumstances, the ordinary MOA grievance procedures shall be followed. Any decrease in the maximum number of officers subject to the Program or dispute regarding the composition of the list of officers in either Tier 1 or Tier 2 is subject to the meet and confer rights of the SJPOA, as set forth in City Charter Section 1111. During the time that this Consent Decree is subject to the jurisdiction of the District Court, should the parties reach impasse under Charter Section 1111, the matter

shall be presented to a District Court Judge or Magistrate Judge, rather than to an outside arbitrator. Once the jurisdiction of the Court expires, the ordinary meet and confer rules shall apply.

18. Changes of, or Unforeseen Circumstances. Should provisions of this Consent Decree prove unmanageable or unfair because of unforeseen circumstances or changes in circumstances, including a change in the law, a party may apply to the District Court for changes in this Consent Decree. The Court may order a change in this Consent Decree, consistent with the general provisions and intentions of the Decree, if it finds that the change is reasonably necessary to administer the Program or it will enable the Program to better accomplish the goals of the ADA and/or FEHA.

19. Elimination of Positions. Should one or more of the Tier 1 or Tier 2 positions be eliminated pursuant to budget cuts or other governmental actions, the Police Department shall designate a specialized position or positions to replace such eliminated position or positions, unless the Department determines that there are no specialized positions remaining outside of the Program that are appropriate for inclusion. Should the Department fail to replace one or more positions, this determination is subject to the meet and confer provision of paragraph 17, above.

20. Distribution of Policy. The City of San Jose must affirmatively offer copies of the Exempt Officer Equality Program, as described above, to all police officers.

21. Training. The City of San Jose must include training about this Program in its continuing professional training.

22. Periodic Report. The Police Department shall file with the Court and serve upon the Plaintiffs and the SJPOA, every two years starting two years after the effective date of this Consent Decree a Report listing the officers subject to the Program, and the selections of such officers to the various Tier One and Tier Two positions during the previous two year period.

23. Enforcement. The United States District Court for the Northern District of California shall retain jurisdiction over this action for the purpose of ensuring compliance and enforcing the provisions of this Consent Decree. The continued jurisdiction of the Court will continue for ten years from the date of this Consent Decree, after which time the Program will revert to ordinary MOA status. Should a dispute arise with respect to the second (10th year) determination made pursuant to paragraph 3, 6 or 7, the Court shall continue jurisdiction long enough to rule on such dispute.

24. Monetary Payments. The City of San Jose shall pay the Plaintiffs the sum of $750,000.00 within 15 days of execution of this Consent Decree. The parties bear their own costs and expenses in this matter, including attorneys fees.

25. Responsibility for Liens. Plaintiffs agree that from the proceeds of this settlement, they are responsible for payment of any attorney or other liens, and shall satisfy said liens. Plaintiffs hold Defendants harmless from any claims arising from any such liens.

26. Release. In consideration for the above, Plaintiffs release and forever discharge the City of San Jose and its employees from any and all claims, actions and compensation whatsoever arising out of the transactions and/or consequences that gave rise to this action.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

27. **Completeness.** This Consent Decree embodies in full the terms of the agreement and understanding between the parties related to the subject matter of this action.

DATED:      JUNE 17, 2005          LAW OFFICES OF FRANK A. JELINCH

By _____
FRANK JELINCH
Attorney at Law

Attorneys for Plaintiffs
RODGER M. CRIPE, et al.

DATED:      JUNE 17, 2005          THE BOCCARDO LAW FIRM

By _____
JOHN C. STEIN
Attorney at Law

Attorneys for Plaintiffs
RODGER M. CRIPE, et al.

DATED:      JUNE 17, 2005          RICHARD DOYLE, City Attorney

By _____
CLIFFORD S. GREENBERG
Senior Deputy City Attorney

Attorneys for Defendant
CITY OF SAN JOSE

DATED:      JUNE 20, 2005          SAN JOSE POLICE OFFICER'S ASSOCIATION

By _____
JOHN R. TENNANT
Attorney at Law

**ORDER**

IT IS SO ORDERED.

DATED:      June 17, 2005

_____
MAGISTRATE JUDGE RICHARD SEEBORG
UNITED STATES DISTRICT COURT

CONSENT DECREE
C-96 20060 RS

16

297125.doc

## PROOF OF SERVICE

CASE NAME:    *Rodger M. Cripe, et al. v. City of San José, et al.*
CASE NO.:    C96-20060 RS (Consolidated with Case No. C96-20494 RS)

I, the undersigned, say: I am a citizen of the United States, over 18 years of age, an employee of the Santa Clara County, and not a party to the within action. My business address is 151 W. Mission Street, San Jose, California 95110.

On June 23, 2005, I caused to be served the within:

**NOTICE OF ENTRY OF CONSENT DECREE**

☒   by placing a true copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, for collection and mailing at my place of business following ordinary business practices. Said correspondence will be deposited with the United States Postal Service at San Jose, California, in the ordinary course of business; and there in United States mail at the place so addressed below. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐   by causing to be personally delivered a true copy thereof to the person at the address set forth below.

☐   by FAX (Telecopier) - as follows: I personally sent to the addressee's telecopier number a true copy of the above-described document(s).

Frank Jelinch, Esq.                          *Attorneys for Plaintiffs*
JELINCH & RENDLER                        *O'KEEFE, et al.*
20045 Stevens Creek Boulevard, Suite 1-E
Cupertino CA 95014-2355
Telephone: 408) 356-6300
FAX # 408-252-3936

John C. Stein, Esq.
THE BOCCARDO LAW FIRM, LLP
111 W. St. John Street
P.O. Box 15001
San Jose, CA 95115-0001
Telephone: (408) 298-5678
FAX: (408) 298-7503

Mr. John Tennant
San Jose Police Officers' Association
1151 North Fourth Street
San Jose, CA 95112

I declare, under penalty of perjury, that the foregoing is true and correct. Executed at San Jose, California, on June 23, 2005.

S. C. CARDOZA

C96-20060 RS                          1                          246186.doc